UNITED STATES of America, Appellee,

v.

Walter Ray WOMACK, Appellant.

UNITED STATES of America, Appellee,

v.

Karleen Rae STONE, also known as
Cassie Williams, also known as
Cassie Fox, Appellant.

UNITED STATES of America, Appellee,

v.

Eric Dwayne FRENCH, Appellant.

UNITED STATES of America, Appellee,

v.

Virgil Lee TOLEFREE, also known
as Virgil Kirkwood, Appellant.

UNITED STATES of America, Appellee,

v.

Donald Eugene CARAWAY, Appellant.

Nos. 91–3677, 92–1028, 92–1215,
92–1218 and 92–1890.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1992.

Decided Feb. 1, 1993.

Rehearing Denied in No. 91–3677
March 1, 1993.

Rehearing and Rehearing En Banc
Denied in No. 92–1890
March 15, 1993.

Whitney E. Tarutis, Bemidji, MN, argued, for Walter Womack.

Charles W. Faulkner, Minneapolis, MN, argued, for Karleen Rae Stone.

Thomas J. O'Connor, Burnsville, MN, argued (Alan D. Margoles, St. Paul, MN, on Tolefree's brief), for Eric French and Virgil Tolefree.

Larry E. Reed, Minneapolis, MN, argued for Donald Caraway.

Denise D. Reilly, Asst. U.S. Atty., Minneapolis, MN, argued, for U.S.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

This is a drug conspiracy case. Five individuals who either pleaded guilty to or were convicted of conspiring to distribute or to possess with intent to distribute cocaine base now appeal from the district court's[1] imposition of sentence. One of the five, Walter Ray Womack, also appeals from his conviction. We affirm.

I.

Donald Eugene Caraway began a cocaine distribution operation in 1987. Initially, he bought cocaine in Florida and brought it back to the Minneapolis–St. Paul area for distribution. Caraway used his brother Napoleon Adorable McBroom, a girlfriend Karleen Stone, and an associate Rodney Keith Taylor to transport money and cocaine between Florida and Minnesota. After Caraway's Florida source was arrested in 1989, Caraway began buying cocaine from Haywood "Buzzy" Kemp, who lived in the Los Angeles, California area.

In the first half of 1990, Caraway switched from cocaine powder to cocaine base (also known as "crack" cocaine). Buzzy Kemp would ship packages containing cocaine to the St. Paul address of Joseph Cook, who would then deliver the packages to Bliss Kemp, Buzzy's mother. Caraway would retrieve the cocaine from Bliss Kemp and drop off payments at her house. In turn, she would send the cash to Buzzy in California. Caraway would then sell his cocaine to a number of dealers, including Eric French, Virgil Tolefree, and Ray Womack.

The federal Drug Enforcement Agency (DEA) and the Minnesota Bureau of Criminal Apprehension (BCA) combined forces to investigate Caraway and his network. Among other investigatory techniques, they conducted a court-authorized wiretap on phones used by Caraway. On October 1, 1990, the DEA and the BCA concluded their investigation by arresting most of the individuals involved in the drug operation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

On October 17, 1990, a federal grand jury returned a ten-count indictment against thirteen individuals, including Womack.

Shortly after the arrests of Caraway and his colleagues on October 1, 1990, Womack closed his St. Paul beauty salon business and left the area. Over the next few months he stayed with friends or relatives in several states. While staying with a friend in Arizona, Womack obtained an Arizona driver's license under the name of Robert Earl White. Womack ended up in California. In April, 1991, a California police officer stopped Womack for a traffic violation. Although Womack gave the officer the name Robert Earl White, the officer discovered that Womack (or White) had been indicted by a federal grand jury in Minnesota and arrested him.

Caraway, Stone, French, and Tolefree reached plea agreements with the government. They pleaded guilty to Count X of the indictment, which charged them with conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). In exchange for their guilty pleas and their cooperation with law enforcement officials by providing information and helping to prosecute their codefendants, the government agreed to move the district court for a downward departure in their sentences. Ray Womack chose to take his case to trial, at which the jury convicted him of conspiracy as well.

On appeal, Womack challenges his conviction and the district court's imposition of a two-level enhancement of his sentence for obstruction of justice. Caraway, Stone, French, and Tolefree make various challenges to their respective sentences.

## II.

■ Womack, who is black, initially asserts that his trial violated his due process rights under the Fifth Amendment and his right to an impartial jury under the Sixth Amendment because there were no black individuals on the venire panel. In essence, he claims that he was denied his constitutional right to a jury selected from a fair cross-section of the community where he was tried.

In *Duren v. Missouri*, the Supreme Court set forth the elements that a defendant must establish in order to state a prima facie violation of the fair-cross-section requirement. Specifically, the defendant must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

Womack meets the first element in that blacks constitute a "distinctive" group in the Minnesota community. Nonetheless, Womack's claim fails because he has not presented any evidence of the percentage of blacks in the Minnesota community or of the percentage of blacks on 1991 Minnesota venire panels. Accordingly, we are unable to gauge whether blacks have not been fairly and reasonably represented on Minnesota venire panels in relation to their presence in the community. *See id.* Moreover, he has failed to produce any evidence to show that any underrepresentation was due to a *systematic exclusion* of blacks from venire panels in the District of Minnesota. As we have stated previously, "[e]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." *Singleton v. Lockhart*, 871 F.2d 1395, 1399 (8th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989).

■ Womack next argues that the government failed to produce certain discovery materials (including wiretap transcripts, witness statements, etc.) to his counsel in a timely manner. We disagree. Womack's attorney admittedly knew that the government had placed copies of all discovery material in the federal Public Defender's office so that counsel for all 13 indicted

codefendants could have access to them. Moreover, when Womack's attorney argued on the day of jury selection that he had not seen the materials because of some misunderstanding with the Public Defender's office, the district court granted the defense a one-week continuance to review the materials and further prepare for trial.

Even if we were to assume that Womack's counsel should bear none of the blame for failing to obtain the discovery materials, which we do not, Womack fails to show any discovery violation on the government's part. The Jencks Act, 18 U.S.C. § 3500, requires that, after a government witness has testified, the government must produce statements made by that witness. Here, the government gave Womack all Jencks Act statements one week before trial. Likewise, Womack fails to show how the government violated the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), when the defense had all discovery materials at least one week prior to trial and Womack has not alleged that any earlier production of the documents would have "enabled [him] to create a reasonable doubt that did not otherwise exist," *United States v. Bledsoe,* 674 F.2d 647, 670 (8th Cir.), *cert. denied sub nom. Phillips v. United States,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982).

 Womack next argues that the district court erroneously admitted a packet of crack cocaine and a gun that the government had obtained through an allegedly unconstitutional search conducted by a St. Paul police officer after he had arrested Womack in September 1990 for driving with an expired license. At trial, Womack failed to object to the cocaine packet, and therefore he may not raise its admission as a trial error on appeal. *United States v. Trent,* 949 F.2d 998, 999 (8th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 3005, 120 L.Ed.2d 880 (1992). Moreover, we do not find the cocaine's admission to be plain error because the cocaine was properly dis-

covered in the course of a pat-down search when the officer believed that he felt a knife. With respect to the gun, we agree with the district court's ruling that the police officer discovered the gun during a proper inventory search of the vehicle Womack was driving prior to having it towed from a no-parking zone. *See South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976).

 Finally, Womack claims that the district court erred in enhancing his base offense level by two levels under U.S.S.G. § 3C1.1 for obstructing justice. Reviewing the district court's decision to depart upward under an abuse of discretion standard, *United States v. Snover,* 900 F.2d 1207, 1209 (8th Cir.1990), we hold that the obstruction enhancement was proper in this case.

Initially, the district court found that Womack had committed perjury. We do not believe this factual finding to be clearly erroneous. At a pretrial hearing, Womack testified under oath that he did not really know Caraway and that he had never made any plans to meet with Caraway. This testimony contradicts the count on which the jury convicted Womack and the trial testimony of several witnesses, including Caraway himself. This perjury, by itself, would justify an obstruction enhancement. U.S.S.G. § 3C1.1, comment. (n. 3(b)).

Additionally, Womack admitted at trial that during his wanderings following the arrests of the other defendants he had obtained an Arizona driver's license with his picture under the false name of Robert Earl White. When a California police officer subsequently stopped him for a traffic violation, Womack gave the officer the license with the Robert Earl White alias. Providing a materially false statement to a law enforcement officer that significantly obstructs or impedes an investigation, as the district court properly found in this case, also supports the imposition of an obstruction enhancement. U.S.S.G. § 3C1.1, comment. (n. 3(g)).

In his brief, Womack raises additional claims of trial court error. We have care-

fully reviewed the trial transcript and find the remainder of Womack's arguments to be without merit.

### III.

In accordance with the terms of his plea agreement, Donald Caraway pleaded guilty to one count of conspiring to distribute cocaine base and one count of conspiring to launder drug proceeds. In exchange, the government dropped three additional counts in the indictment, urged the court to give Caraway a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and moved the court under U.S.S.G. § 5K1.1 for a downward departure from the guideline sentencing range based on Caraway's substantial assistance to the government. At sentencing, Caraway moved the court to depart not only below the guideline range, but even below the statutory minimum sentence of twenty years. Finding that the government had not made a substantial assistance motion under 18 U.S.C. § 3553(e), the district court held that it had no authority to depart below the statutory minimum and sentenced Caraway to twenty-years' imprisonment followed by ten years of supervised release. On appeal, Caraway challenges the district court's refusal to depart below the statutorily mandated minimum sentence.

Initially, Caraway argues that the district court had authority to depart below the statutory minimum because the government had moved for a downward departure based on substantial assistance under § 5K1.1 of the sentencing guidelines. Our holding in *United States v. Rodriguez–Morales*, 958 F.2d 1441 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992), controls this issue. In *Rodriguez–Morales*, we held that guideline section 5K1.1 and statutory section 3553(e) provide two separate, independent grounds for departing from the appropriate guideline range. *Id.* at 1447. Accordingly, we further held that a sentencing court may depart *below* the statutory minimum sentence only when the government has made

a motion specifically under section 3553(e). *Id.* In this case, because the government moved for a departure only under guideline section 5K1.1 and not under section 3553(e), the district court lacked authority to depart below the mandatory minimum sentence of twenty years. *Cf. United States v. Hawley*, 984 F.2d 252, 253–54 (8th Cir.1993) (applying *Rodriguez–Morales* and reversing the district court's departure below the statutory minimum in the absence of a motion under section 3553(e)).

Caraway asks that we overrule *Rodriguez–Morales*. The short answer to this request is to point out that "[a] decision of a panel of this court is the law of the circuit and we are compelled to follow it." *Dudley v. Dittmer*, 795 F.2d 669, 673 (8th Cir.1986). Only the court en banc may overrule an earlier panel's decision.

Alternatively, Caraway challenges the constitutionality of interpreting the two substantial assistance provisions in a way that allows the government the option of moving for a departure either under section 5K1.1 so that the sentencing court may depart *down to* the mandatory minimum or under section 3553(e) so that the sentencing court may depart *below* the statutory minimum. Caraway argues that such an interpretation violates due process under the Fifth Amendment and the separation of powers doctrine inherent in the framework of the constitution.

In his plea agreement, Caraway agreed to the applicability of the sentencing guidelines and to the government's moving for a departure only under section 5K1.1. The agreement speaks only of section 5K1.1 and nowhere mentions a motion being made under section 3553(e). *See United States v. Coleman*, 895 F.2d 501, 506 (8th Cir.1990) ("An express promise to file a [3553(e)] motion unambiguously binds the government. The lack of such a promise is clear evidence that such a promise was not made."). Moreover, the agreement clearly contemplates a floor of twenty years on any departure: "The Section 5K1.1 motion

will allow, but not require, the Court to depart from the guidelines to a sentence of 20 years." (Plea Agreement ¶ 13.)

Given the terms of the plea agreement, we believe that Caraway has waived a challenge to the validity of the guidelines as interpreted by this court in *Rodriguez–Morales* and other cases. *See United States v. Durham*, 963 F.2d 185, 187 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992). Caraway voluntarily consented to the government's filing of only a section 5K1.1 motion and to the imposition of a twenty-year sentence by signing the plea agreement that provided for a such a sentence. Moreover, after the district court ruled that it could not depart below the statutory minimum sentence, the court specifically asked Caraway if he wished to withdraw his plea. Caraway responded that he did not.

Caraway chose to accept a punishment of at least twenty years by signing the plea agreement. By so doing, he avoided the very real possibility of being sentenced to life imprisonment, a sentence he would have automatically incurred given his criminal history and a conviction on the conspiracy charge. "This court has held that a defendant who explicitly and voluntarily exposes himself to a specific sentence may not challenge that punishment on appeal." *United States v. Fritsch*, 891 F.2d 667, 668 (8th Cir.1989) (citing *United States v. Pratt*, 657 F.2d 218, 220 (8th Cir.1981)); *see also United States v. Durham*, 963 F.2d at 187. Without a showing that the government misrepresented the contents or the effect of the plea bargain, it would be unjust to allow Caraway to reap the benefits of his plea by receiving a departure according to the guidelines and to then challenge the validity of the guidelines on appeal. *See Fritsch*, 891 F.2d at 668.

## IV.

■ Virgil Tolefree, Eric French, and Karleen Stone also pleaded guilty to one count of conspiracy under the terms of their respective plea agreements. The district court departed downward from the appropriate guideline ranges for all three individuals based on their substantial assistance to the government, but they now challenge their sentences on appeal.

French and Tolefree argue that their sentences are disproportionate to those given to their codefendants. In effect, they claim that the district court failed to depart to the same degree that it did in other cases. Their argument raises an issue concerning the extent of the district court's departure for substantial assistance, which we have previously held is not reviewable on appeal. *United States v. Sharp*, 931 F.2d 1310, 1311 (8th Cir.1991); *United States v. Left Hand Bull*, 901 F.2d 647, 650 (8th Cir. 1990). Moreover, this court has stated that the shorter sentence of one codefendant is not enough to invalidate the sentence of another: "A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own; a sentence is not disproportionate just because it exceeds a co-defendant's sentence." *United States v. Granados*, 962 F.2d 767, 774 (8th Cir.1992). French and Tolefree fail to take into account the many different factors that the district court relied upon to reach appropriate sentences for all of their codefendants who pleaded guilty and provided assistance to the government.

■ French and Tolefree also argue that the disparity in the guidelines between sentences relating to crack cocaine and powder cocaine violates equal protection. We have addressed attacks to this difference several times and have always reaffirmed our decision that the difference does not violate any constitutional mandates. *See United States v. Lattimore*, 974 F.2d 971, 974–76 (8th Cir.1992) (finding no Congressional discriminatory intent violative of equal protection where percentages show at most disparate impact and Congress had legitimate, rational reasons in reacting strongly to "the violent impact crack would have upon the drug trade in the United States"); *see also United States v. Williams*, 982 F.2d 1209, 1213 (8th Cir.1992) (rejecting due process and equal protection challenges and

listing 8th Circuit precedents); *United States v. Willis,* 967 F.2d 1220, 1225–26 (8th Cir.1992) (rejecting equal protection challenge in light of Minnesota Supreme Court opinion reaching opposite result under state constitution); *United States v. Johnson,* 944 F.2d 396, 404 n. 7 (8th Cir.) (same), *cert. denied,* — U.S. ——, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991); *United States v. House,* 939 F.2d 659, 664 (8th Cir.1991) (finding no equal protection or eighth amendment violation from different treatment between cocaine base and cocaine powder under 21 U.S.C. § 841(b)(1)(A)(iii)); *United States v. Buckner,* 894 F.2d 975, 978–80 (8th Cir.1990) (rejecting substantive due process argument). Accordingly, we reject the claim in this case.

■ Finally, Stone and French claim that the district court did not adequately articulate its reasoning for giving them the particular sentences that it did. Insofar as this is an attempt to lure us into reviewing the extent of the district court's substantial assistance departure, we reassert that the district court's decision is not reviewable on appeal. *United States v. Sharp,* 931 F.2d at 1311; *United States v. Left Hand Bull,* 901 F.2d at 650. With respect to the court's articulation of its reasons for reaching the specific sentences, we have reviewed the sentencing transcripts for both Stone and French and are satisfied that the district court adequately stated its rationale for departing from the applicable guideline range. *See* 18 U.S.C. § 3553(c).

## V.

In summary, we hold that Womack was properly convicted and sentenced for conspiring to distribute or to possess with intent to distribute cocaine base. We also affirm the sentences of Caraway, Stone, French, and Tolefree.