UNITED STATES of America, Plaintiff–Appellee,

v.

Leland Ewing SALES, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Eugene Kenneth MOORE, Defendant–Appellant.

Nos. 93–3239, 93–3252.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1994.

Decided June 7, 1994.

---

Keith Uhl, Des Moines, IA, argued, for appellant.

Gary Hayward, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

Before HANSEN, Circuit Judge, HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Leland Ewing Sales and Eugene Kenneth Moore appeal from their sentences after being convicted of conspiring to distribute methamphetamine, 21 U.S.C. § 846 (1992). They allege that the district court [1] erred in applying a preponderance of the evidence standard in determining the amount of methamphetamine to attribute to their offenses for the purposes of applying the relevant Sentencing Guidelines. They also argue that the district court's determination of the drug quantity was not supported by sufficient evidence. We affirm their sentences.

Floyd and Lori Stockdall ran an extensive drug distribution operation in Ottumwa, Iowa, involving, among others, Sales, Moore, Richard Kunkle, Paige Williams, John Sorenson, James and Tina Kilby, Rhonda and Daniel Wold, and Tonya Galvin. Authorities arrested the Stockdalls in November 1991, and the Stockdalls agreed, as a condition of their plea agreement, to cooperate with the government and identify others involved in the organization. Through their cooperation, authorities learned that Sales and Kunkle were involved together in distributing methamphetamine. Moore was later identified as a participant in their methamphetamine operation after the Kilbys and Sorenson were arrested in a related investigation and agreed to cooperate with the government.

Sales, Moore and Kunkle were eventually indicted and charged with conspiring to distribute methamphetamine from January 1987 to November 1992 in violation of 21 U.S.C. § 846. Kunkle was charged with distribution

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1). Sales and Moore were charged with possessing firearms in connection with a conspiracy to distribute methamphetamine in violation of 18 U.S.C. §§ 924(c)(1) and (2). A jury found Sales, Moore and Kunkle guilty of the conspiracy charge, found Kunkle guilty of distributing methamphetamine, and acquitted Sales and Moore on the possession of firearms charge.[2] The district court sentenced both Sales and Moore to 188 months in prison and five years of supervised release for conspiring to distribute more than three but less than ten kilograms of methamphetamine. The district court based this quantity determination on the testimony of several of the participants in the organization.

Sales and Moore first contend the district court erroneously applied a preponderance of evidence standard of proof at sentencing when it determined the quantity of methamphetamine Sales, Moore and Kunkle conspired to distribute.

■ We review the issue of the proper burden of proof at sentencing de novo. *United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir.1992). The government must prove all of the essential elements of an offense beyond a reasonable doubt. *McMillan v. Pennsylvania*, 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986). However, once the conviction has been legally obtained, the government need only prove the facts bearing on the sentence by a preponderance of the evidence. *United States v. Galloway*, 976 F.2d 414, 423 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993). This circuit has repeatedly held that a quantity of drugs involved in a conspiracy is not an essential element of the offense, and therefore the government need not prove the quantity beyond a reasonable doubt. *See, e.g., United States v. Magee*, 19 F.3d 417, 422 (8th Cir.1994) (preponderance of the evidence standard at sentencing does not violate a defendant's due process rights); *United States v. Calva*, 979 F.2d 119, 121–22 (8th Cir.1992); *United States v. Simmons*, 964 F.2d 763, 771–72 (8th Cir.1992).

Sales and Moore next argue that the district court erred in calculating the quantity of drugs involved in the offense for the purposes of sentencing. They contend the district court erred in calculating the amount because the testimony upon which the court relied lacked credibility, sufficient reliability and corroboration.

■ We review the district court's determination of drug quantity under a clearly erroneous standard. *United States v. Bieri*, 21 F.3d 819, 824 (8th Cir.1994). Defendants who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. Simmons*, 964 F.2d 763, 773 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992). The court may "consider any evidence in its sentencing as long as it has 'sufficient indicia of reliability to support its probable accuracy.' " *United States v. Behler*, 14 F.3d 1264, 1273 (8th Cir.1994) (quoting United States Sentencing Commission, *Guidelines Manual* § 6A1.3(a) (Nov. 1993)).

■ For the purpose of sentencing, the district court determined that Sales and Moore were responsible for more than three but less than ten kilograms of methamphetamine. The court based its calculation on the testimony of several participants in the conspiracy. Sales and Moore specifically argue that Tonya Galvin, Moore's girlfriend during the drug operation, lacked credibility when she testified that Sales and Moore delivered approximately one-half pounds of methamphetamine almost every week for over two years. While the court questioned Galvin's credibility and the amount of methamphetamine she attributed to Sales and Moore, the testimony of other witnesses involved in the drug distribution operation convinces us that the district court did not clearly err in finding that Sales and Moore con-

**2.** Sales and Moore do not appeal their convic- tions.

spired to distribute more than three but less than ten kilograms of methamphetamine.

Even if the quantity described by Galvin was wholly ignored, the record supports the district court's calculation of methamphetamine distributed as a result of the conspiracy between Sales and Moore. First, Lori Stockdall described at least four pounds (1.8 kilograms). She sold Sales four one-quarter pound packages between 1987 and 1989, and later sold him two one-pound packages and a one-quarter pound in 1990. Stockdall also testified that she purchased one pound in 1991 from Kunkle, who Sales described to her as his "partner." Next, Sorenson, who was involved in the operation, testified he initially purchased four ounces from Moore, and eventually purchased approximately two to five pounds (.907 to 2.27 kilograms) from Moore during the course of his relationship with Moore. Finally, Williams, who was also involved in the organization, testified he bought at least another fifteen pounds (6.8 kilograms) from Kunkle, and that Kunkle would then distribute the methamphetamine to Sales and Moore. These three witnesses described a total of at least 9.5 kilograms of methamphetamine, thus supporting the district court's calculation that Sales and Moore conspired to distribute more than three but less than ten kilograms of methamphetamine.

In addition, several other individuals linked Sales and Moore to quantities of methamphetamine. Frances Burgess testified she purchased small quantities of methamphetamine from Sales five or ten times. Judith Sanders testified she lived with Sales and helped him sell and deliver the methamphetamine, including one pound she picked up from the Stockdalls. Finally, Elaine Todd, Tonya Galvin's mother, testified that she traveled with Sales to obtain methamphetamine on several occasions, witnessed Sales weighing and preparing the drugs for sale, and delivered packages of methamphetamine for Kunkle to the Stockdalls.

Considering the testimony of the witnesses, we cannot conclude that the district court clearly erred in calculating the quantity of methamphetamine involved and attributed to Sales and Moore for the purpose of sentenc-ing them. Accordingly, we affirm the sentences imposed by the district court.