**UNITED STATES of America, Appellee,**

v.

**Tyrone Lamonte THOMPSON, Appellant.**

No. 94–3092.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1995.

Decided March 22, 1995.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Tyrone Lamonte Thompson appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri upon a jury verdict finding him guilty on one count of conspiracy to distribute cocaine base and four counts of distribution of cocaine base. The district court sentenced him to 235 months imprisonment, five years supervised release, and a special assessment of $250.00. For reversal, Thompson argues: (1) the district court erred in using the preponderance standard in determining the quantity of cocaine base involved in his offenses; (2) the quantity determination constitutes clear error, (3) the disparity between his sentence and his codefendants' sentences violates his due process rights, (4) the sentencing disparity demonstrates unconstitutional retaliation by the district court for his decision not to plead guilty, (5) his sentence constitutes cruel and unusual punishment, and (6) the 100:1 ratio used in sentencing for crimes involving cocaine base versus powder cocaine is unenforceable. For the reasons discussed below, we affirm.

## Background

The indictment charged Thompson and codefendants Gloria Nelson and Glenn Jones each with one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 and four counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). Before trial, the government made a plea offer to Thompson, which he declined. His codefendants, Nelson and Jones, did enter into plea agreements. They pled guilty to participating in a conspiracy involving five to twenty grams of cocaine base. They also agreed to testify against Thompson at trial. Nelson and Jones were sentenced to twenty-four and eighteen months imprisonment, respectively, having

T. Patrick Deaton, Springfield, MO, argued, for appellant.

David P. Rush, Asst. U.S. Atty., argued, for appellee.

1. The Honorable Russell G. Clark, Senior District Judge, United States District Court for the Western District of Missouri.

received downward departures for their cooperation.

At a side bar conference, at the beginning of Thompson's trial, defense counsel reopened the possibility of entering into a plea agreement. The government's prior plea offer had been withdrawn, but the prosecutor stated that Thompson could plead guilty to a conspiracy involving between fifty and 150 grams of cocaine base, with a two-level upward adjustment for his leadership role. The prosecutor also commented that Thompson might receive three points for acceptance of responsibility. At that point, the district court stated that Thompson could not receive a three-point adjustment for acceptance of responsibility but, at best, could receive a two-point adjustment. Thompson declined the offer, and the trial proceeded.

The evidence at trial showed that Thompson was involved in a cocaine base distribution business which was operated out of a house in Joplin, Missouri, owned by Nelson. A narcotics officer with the Missouri State Highway Patrol purchased cocaine base from Nelson at the house on four occasions, and each time the transaction was recorded on a hidden microcassette. The first two "buys" took place on December 9, 1993, and were for $100.00 and $40.00. Thompson was present in the house when the buys occurred. The next purchase by the undercover officer, for another $100.00, took place on the afternoon of December 15, 1993. On that occasion, Nelson was at the house when the officer arrived. The officer had to wait for Thompson to show up before making the buy. Later that evening, the officer returned for a fourth time with a second undercover officer. The officer purchased $100.00 worth of cocaine base, and the second officer attempted to buy $50.00 worth. On that occasion, Thompson left and then came back with two other men. They became suspicious after the undercover officers refused to smoke the cocaine base in their presence. Thompson indicated that they intended to search the undercover officers. The first officer revealed her gun to avoid being searched, saying that she would not go into a crack house without it. When the second officer's cassette recorder was felt by one of the three

men, she said it was a pager. After her gun was also discovered, they promptly left with the cocaine base purchased for $100.00.

The undercover officers each testified for the government regarding the operations at Nelson's house. According to the officer who had made all four purchases, she observed numerous people there, including teenagers and one infant. Although she dealt directly with Nelson, she testified that Thompson appeared to be in charge. He supplied the cocaine base, was present at every transaction, and told people what to do.

Nelson's sister, Carol Stephens, testified for the government. She admitted that she used cocaine base and that she had prior felony convictions. She agreed to cooperate with the government after being arrested in Joplin on December 28, 1993. Jones and Nelson each testified for the government, pursuant to their plea agreements. They also admitted using cocaine base. Stephens, Jones, and Nelson each described Thompson as the person in charge of the operations at Nelson's house, controlling everyone involved either by having them on cocaine base or by having them sell it. He involved friends and relatives, including some of Stephens' and Nelson's children. They testified that Thompson sold cocaine base from several locations in Joplin, as well as from Muskogee, Oklahoma. They also described large quantities of cocaine base and cash that were transacted by Thompson. Nelson, for example, testified that she once observed Thompson make $3,500 in a single night, and $6,000 another night, selling cocaine base. Nelson and Jones both described particular trips on which they accompanied Thompson while he transported cocaine base from Muskogee to Joplin. According to Jones, on one trip they transported 29 ounces of cocaine base; on another they transported 21 ounces. This testimony was supported by Nelson's and Stephens' testimony.

At sentencing, the district court determined that Thompson's offenses involved 1,400 grams of cocaine base, which was derived from Jones's testimony that they transported 29 and 21 ounces from Muskogee to Joplin. The district court calculated Thompson's base offense level as a 36, for offenses

involving at least 500 grams but less than 1.5 kilograms of cocaine base. Thompson also received a two-level upward adjustment for his role as a leader or organizer of the conspiracy. His guideline range was 235 to 293 months, based upon a total offense level of 38 and a criminal history category of I. Thompson was sentenced to 235 months on each count, to run concurrently. He appealed.

## Discussion

■ Thompson first .argues that the district court erred by using the preponderance standard for determining the quantity of drugs involved in the conspiracy. Determination of the appropriate evidentiary standard requires de novo review by this court. *United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir.1992). Although Thompson concedes that the well-established general rule permits use of the preponderance standard to prove relevant conduct, *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986); *United States v. Sales*, 25 F.3d 709, 711 (8th Cir. 1994) (*Sales* ), he contends that the drug quantity determination in the present case called for use of the clear and convincing standard, as applied in *United States v. Kikumura*, 918 F.2d 1084 (3d Cir.1990) (*Kikumura* ) (applying clear and convincing standard where departure resulted in twelve-fold, 330–month sentencing increase). Thompson further argues that *United States v. Pugh*, 25 F.3d 669, 676 (8th Cir.1994) (*Pugh* ), does not apply. In *Pugh*, this court affirmed the district court's use of the preponderance standard to sentence a defendant convicted of conspiracy to distribute cocaine base, and four counts of distribution, even though consideration of drug quantities not proven under the distribution counts resulted in a four-fold sentencing increase. *Id.* This court declined to require use of the clear and convincing standard in *Pugh* because the quantity determination was part of the defendant's relevant conduct with respect to the conspiracy for which he was found guilty beyond a reasonable doubt and, moreover, the increase was only four-fold. *Id.* Thompson argues that we should nevertheless follow *Kikumura* because the evidence relied upon to determine the drug quantity came from "ne'er-do-wells who were crack addicts, convicted felons and/or codefendants" and that, as a result of their unreliable testimony, he received a four-fold increase for "invisible quantities" of cocaine base. Brief for Appellant at 11. In *Pugh*, by contrast, some of the quantity evidence relied upon by the ·district court came from a law enforcement officer who testified about the defendant's incriminating statements. 25 F.3d at 676.

We hold that the heightened standard of proof was not required in the present case. The district court's drug quantity determination was supported by evidence introduced at trial to prove the conspiracy count. Moreover, the determination was directly supported by testimony from Jones and indirectly ·supported by testimony from Nelson and Stephens, each of whom was subjected to cross-examination by the defense. *See, e.g., United States v. Behler*, 14 F.3d 1264, 1272 (8th Cir.) (where drug quantity determination resulted in 16–level increase, use of preponderance standard for determining drug quantity was not erroneous because supporting evidence was introduced at trial to prove the conspiracy count and government did not need to resort to evidence of uncharged conduct), *cert. denied*, — U.S. —, 115 S.Ct. 419, 130 L.Ed.2d 335 (1994).

■ Thompson also argues that the district court's finding that his offenses involved 1,400 grams of cocaine base was clearly erroneous. He maintains that the evidence supporting this factual determination lacked sufficient indicia of reliability because it merely consisted of the testimony of the so-called "ne'er-do-wells." Thompson also notes that the undercover buys involved less than two grams of cocaine base and the undercover officers could not testify that Thompson made any admissions regarding other amounts of cocaine base. We hold that there was sufficient evidence from which the district court could conclude that more than 500 grams of cocaine base were involved in the conspiracy and, moreover, that Thompson was a leader or organizer of the conspiracy. Upon careful review, we cannot reasonably say that "the entire record definitely and firmly convinces us that a mistake has been made." *Sales*, 25 F.3d at 711.

Thompson next argues that the disparity between his sentence and his codefendants' sentences constitutes a violation of due process. As stated above, Nelson and Jones received sentences of twenty-four and eighteen months, respectively. Thompson received a 235-month sentence. Although he recognizes that a defendant cannot rely on a codefendant's sentence as a "yardstick" for his own, *United States v. Womack*, 985 F.2d 395, 400 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993), Thompson argues that this case is distinguishable from *Womack* and the myriad of other cases which have upheld variations in sentences among codefendants because, he contends, the disparity has no foundation in the facts of the case. For example, he highlights the facts that he is younger than Nelson; the drug distributions occurred in Nelson's house, not his; the undercover officers dealt directly with Nelson, not him; and Nelson's criminal record is worse than his.

As we have concluded, Thompson has not presented any meritorious argument for challenging the application of the guidelines to his conviction. The evidence supported the district court's drug quantity determination as well as the finding that Thompson was the leader or organizer of the conspiracy. By contrast, the evidence also supported a finding that Nelson and Jones were relatively minor players. Moreover, it was not inappropriate for Jones and Nelson to receive downward departures, because they pled guilty and cooperated with the government. *See* U.S.S.G. § 5K1.1. Thus, we hold that the district court did not abuse its discretion in sentencing Thompson to 235 months. *Cf. United States v. Jackson*, 959 F.2d 81, 83 (8th Cir.) (this court will not order resentencing for mere variations in sentencing among similarly situated defendants unless abuse of discretion is shown), *cert. denied*, —— U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992).

In his fourth argument, Thompson invokes the constitutional mandate that a defendant may not be punished for exercising his constitutional right to a trial. *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969).

He relies on *United States v. Mazzaferro*, 865 F.2d 450, 460 (1st Cir.1989) (*Mazzaferro* ), in which the First Circuit remanded for resentencing by a judge other than the original sentencing judge because there was an appearance of vindictiveness in the original sentence. In *Mazzaferro*, the defendant who went to trial received a twenty-year sentence, while his codefendants, who were more culpable, pled guilty and received ten-year sentences. *Id.* Thompson contends that the disparity between his and his codefendants' sentences, combined with a comment made by the district court during a side bar conference, together demonstrate that the district court retaliated against him for exercising his constitutional right to a trial.

The district court's comment to which Thompson refers was made at the beginning of trial, after opening statements but before the government put on any evidence. In the context of discussing a possible plea agreement—discussions initiated by Thompson— the prosecuting attorney stated that the plea agreement would have to include a two-level upward adjustment for Thompson's leadership role, but that Thompson might receive three points for acceptance of responsibility. At that point, the district court interjected: "[L]et me make a statement. I'm not going to give him three points for acceptance. We've got a jury here. That's cost the government at least $2,000. At the very best he can get a two-point but not a three-point." Trial transcript at 8.

We reject Thompson's retaliatory sentencing argument for two reasons. First, *Mazzaferro* is easily distinguished from the present case. Unlike Thompson, whom the district court found to be a leader or organizer of the conspiracy, the defendant in *Mazzaferro* "played a minor role" in the criminal activity, and one of his codefendants who pled guilty was the "prime mover in carrying out the crime." 865 F.2d at 460. Moreover, the district court in *Mazzaferro* gave no reasons for the apparently illogical sentencing differential. *Id.* By contrast, the district court in the present case made specific findings to support its guideline calculations and sentenced Thompson within the applicable guideline sentencing range. Second, the dis-

trict court's comment regarding Thompson's ineligibility for a three-point downward adjustment for acceptance of responsibility was nothing more than an accurate statement of the law. Thompson could not receive the extra one point, in addition to the standard two points, because he did not timely provide complete information concerning his own involvement in the offense or timely notify the government of his intent to enter a plea, so as to allow the government to avoid preparing for trial and the district court to allocate resources efficiently. *See* U.S.S.G. § 3E1.1.

Thompson also contends that his sentence is grossly disproportionate to the severity of the offenses for which he was convicted, and thus constitutes cruel and unusual punishment. He highlights both the disparity between his sentence and his codefendants' sentences, and the disproportionality between sentences for cocaine base offenses versus powder cocaine offenses. This argument is without merit. To begin, we specifically reject both of these two disparity factors as independent grounds for vacating Thompson's sentence. In any case, sentences of even greater severity than Thompson's have consistently withstood challenges under the cruel and unusual punishment clause of the Eighth Amendment. *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (life sentence without possibility of parole for possession of 672 grams of cocaine is not cruel and unusual punishment); *United States v. Buckner,* 894 F.2d 975, 980–81 (8th Cir.1990) (*Buckner*) (upholding 250–month sentence for possession of 53 grams of cocaine base). Given our narrow review under the Eighth Amendment, *United States v. Morse,* 983 F.2d 851, 855 (8th Cir.1993), we hold that Thompson's sentence is not grossly disproportionate to the crimes for which he was convicted.

Finally, Thompson argues that the statutory sentencing framework, which punishes crimes involving cocaine base versus powder cocaine by a 100:1 ratio, is unconstitutional, or at least unenforceable. Thomp-

son urges this court to reconsider its decision in *United States v. Clary,* 34 F.3d 709 (8th Cir.1994) (*Clary*) (statutory framework that created 100:1 sentencing ratio does not violate equal protection), *cert. denied,* —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1126 (1995). In addition to repeating the constitutional arguments that were advanced in *Clary,* and other similar cases, Thompson cites a recent decision from the Northern District of Georgia which applied the rule of lenity[2] to sentence the defendant under the lower powder cocaine standards, despite the fact that the defendant had been convicted of offenses involving cocaine base. *United States v. Davis,* 864 F.Supp. 1303 (N.D.Ga. 1994) (*Davis*). In *Davis,* the district court relied on medical and scientific expert testimony to conclude that the terms "cocaine base" and "cocaine" are scientifically synonymous. The district court in *Davis* thus concluded

> [b]ecause it turns out that the definitions are identical, there is unquestioned ambiguity on the face of the statute, and, unless it could be said that the legislative history or public policy concerns alter the outcome, the rule of lenity must be applied, ... and the heightened penalties for cocaine base must be ignored.

*Id.* at 1306.

Upon review, we hold that Thompson's constitutional arguments are foreclosed by *Clary,* its progeny, and cases which have rejected other constitutional challenges to the 100:1 sentencing ratio. *See, e.g., Buckner,* 894 F.2d at 978–81 (rejecting due process and cruel and unusual punishment challenges). As to the novel theory applied in *Davis,* the government correctly points out that there is no evidentiary basis in the present case for this court to consider the issues that were addressed in that decision. Accordingly, the judgment of the district court is affirmed.

---

**2.** "This rule requires a sentencing court to impose the lesser penalty where there is ambiguity about the reach of a criminal statute or the penalties to be imposed." *United States v. Davis,*

864 F.Supp. 1303, 1305 (N.D.Ga.1994) (citing *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980)).