# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3032

_____

United States of America,      *
                                *

           Appellee,         *

                                *      Appeal from the United States

     v.                       *      District Court for the

                                *      District of South Dakota.

Mario Hugo Arias,        *

                                *

           Appellant.      *

_____

Submitted: February 26, 2001
Filed: June 8, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, and BYE Circuit Judges.

_____

HANSEN, Circuit Judge.

Mario Hugo Arias, along with four other individuals, was charged with possession with intent to distribute methamphetamine, conspiracy to distribute methamphetamine, and use of a communication facility in causing or facilitating the commission of a felony under the Controlled Substances Act, in violation of 21 U.S.C. §§ 841 (a)(1), 846, 843(b) (1994) and 18 U.S.C. § 2 (1994). Because Arias's coconspirators all pleaded guilty, only he proceeded to trial. On May 19, 2000, a jury

convicted Arias on all counts. The district court[1] sentenced Arias to 276 months imprisonment, six years of supervised release, and a $3500 fine. Arias appeals both his conviction and his sentence asserting that the district court erred in making several evidentiary determinations and that his sentence violated the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). We affirm.

I.

Investigation into the defendant's involvement in this conspiracy case began in November 1999 when South Dakota law enforcement officials searched the residence of Lisa Alatorre and Sergio Perez-Rodriquez after receiving information that the occupants were involved in the distribution of drugs. The search produced, among other items, 3.5 grams of actual methamphetamine. Officers later searched a storage locker rented to Perez-Rodriquez, which contained 37.3 grams of actual methamphetamine and a business card belonging to Arias. After police arrested Alatorre and Perez-Rodriquez, Perez-Rodriquez agreed to cooperate with law enforcement. Perez-Rodriquez told police that he received his methamphetamine from Homero Mondragon-Barrera, who in turn delivered the drugs for Arias. Perez-Rodriquez knew as early as 1996 that Arias was a supplier of methamphetamine, but he did not utilize Arias's services until 1999.

With the assistance of law enforcement, Perez-Rodriquez placed a monitored telephone call to Arias at a restaurant in South Sioux City, Nebraska. The phone number at the restaurant corresponded with the phone number listed on Arias's business card seized from Perez-Rodriquez's storage locker. Because Perez-Rodriquez was unable to reach Arias at the restaurant, he placed a series of monitored and

---

[1]The Honorable Lawrence L. Piersol, now Chief Judge, United States District Court for the District of South Dakota.

recorded calls to Arias's cell phone.[2] During these calls, the two discussed the purchase of one pound of methamphetamine and its delivery to Sioux Falls, South Dakota. Arias told Perez-Rodriquez that Mondragon-Barrera would be the one transporting the drugs to him on November 23, 1999, and that Mondragon-Barrera would be driving the same blue Honda that Mondragon-Barrera drove when making previous deliveries to Perez-Rodriquez. On the day of delivery, Perez-Rodriquez called Arias to inform him that Mondragon-Barrera had not arrived in Sioux Falls and was late making the delivery. Shortly thereafter, Mondragon-Barrera called Perez-Rodriquez and confirmed that delivery was to occur at a Sioux Falls shopping mall. When Mondragon-Barrera arrived at the mall, law enforcement agents arrested him. A search of his vehicle uncovered a pound mixture of methamphetamine, containing 60.9 grams of actual methamphetamine, wrapped in duct tape and fishing line hidden in a compartment in the dash of the Honda. Mondragon-Barrera told agents that Edward Compos was Arias's supplier and that Arias called upon Compos when Perez-Rodriquez requested additional drugs. Pursuant to his coconspirators' cooperation with law enforcement, a jury subsequently convicted Arias of the seven counts charged in his indictment. He now appeals.

II.

Arias first contends that the district court impermissibly admitted into evidence statements made by his coconspirator; specifically, Mondragon-Barrera's testimony about Mondragon-Barrera's conversation with Compos wherein Compos attributed the methamphetamine to Arias. We review the district court's evidentiary rulings for an abuse of discretion. United States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000), cert. denied, No. 00-8521, 2001 WL 167809 (U.S. May 14, 2001). The district court ruled that the testimony was nonhearsay, admissible under Federal Rule

---

[2]This cell phone is linked to Arias's former wife, who stated at trial that she gave the phone to Arias in April 1999 and has not seen it since.

of Evidence 801(d)(2)(E). Coconspirator statements are properly admitted if the government proves by a preponderance of the evidence that (1) a conspiracy existed; (2) both the declarant and the defendant were members of the conspiracy; and (3) the declarant made the statement in the course and in furtherance of the conspiracy. United States v. Whitehead, 238 F.3d 949, 951 (8th Cir. 2001). Statements made "in furtherance" of a conspiracy include those which identify the coconspirators or the coconspirators' supply source for the illegal drugs, United States v. Meeks, 857 F.2d 1201, 1203 (8th Cir. 1988), and those statements which discuss a coconspirator's role in the conspiracy, United States v. Johnson, 925 F.2d 1115, 1117 (8th Cir. 1991).

Perez-Rodriguez testified that he received his methamphetamine from Arias who co-owned a restaurant in South Sioux City, Nebraska. When Perez-Rodriguez wished to arrange a drug transaction, he either called Arias at the restaurant or on a cell phone. Mondragon-Barrera testified that he had known Arias since 1998 and had transported drugs to Sioux Falls for him in the past. He further testified that Campos directed him where to deliver the methamphetamine once in Sioux Falls, but that Arias was the one who ordered Campos to contact Mondragon-Barrera to make the deliveries. Campos also told Mondragon-Barrera that Arias was the source of the methamphetamine. Arias argues that the government did not prove that Campos existed, and therefore, the district court's admission of Mondragon-Barrera's testimony attributing statements to Campos was an abuse of discretion. We cannot agree with Arias's assertion. For statements to be admissible, it is not necessary that the declarant either be a charged member of the conspiracy or that the declarant be identifiable so long as the statement itself proves reliable. United States v. Gonzales, 90 F.3d 1363, 1370 n.6 (8th Cir. 1996); United States v. Carr, 67 F.3d 171, 174 (8th Cir. 1995), cert. denied, 516 U.S. 1182 (1996). From our review of the record, the district court's specific finding made before the evidence was admitted that Campos was a member of the conspiracy is not erroneous, let alone clearly erroneous.

4

We conclude that the district court did not err in admitting these statements under 801(d)(2)(E): clearly a conspiracy existed; Arias, Perez-Rodriguez, Campos, and Mondragon-Barrera were members of that conspiracy; and the statements attributed to Campos by Mondragon-Barrera were made in furtherance of the conspiracy because the statements identified the coconspirators, their roles, and the source of the drugs. Furthermore, given the fact that the defendant was recorded during three different telephone calls making and confirming the arrangements for the delivery, if there was any error in the admission of Mondragon-Barrera's testimony about what Campos told him, it was harmless beyond a reasonable doubt.

Arias also asserts that the district court erroneously admitted evidence of his earlier felony drug conviction. Arias pleaded no contest in 1997 to possession of methamphetamine. Federal Rule of Evidence 404(b) allows for the use of evidence of Arias's prior unlawful conduct, so long as that conduct is relevant to some issue other than Arias's penchant toward illegal activity. See United States v. Powell, 39 F.3d 894, 896 (8th Cir. 1994). Arias argues that the government used this evidence solely to illustrate his propensity to possess a controlled substance and not, as the government claims, to illustrate his intent to participate in a conspiracy to distribute methamphetamine.

"Evidence of other crimes is admissible if '(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value.'" United States v. Oates, 173 F.3d 651, 659 (8th Cir.) (quoting United States v. Green, 151 F.3d 1111, 1113 (8th Cir. 1998)), cert. denied, 528 U.S. 890 (1999). In admitting the conviction, the district court concluded that the evidence was more probative than prejudicial and determined that the amount of methamphetamine involved in Arias's prior conviction was "clearly not a personal use amount" and therefore admissible to illustrate Arias's intent to distribute methamphetamine in the present case. (Trial Tr. at 10.) The district court did not

abuse its discretion in admitting Arias's prior conviction for possession of methamphetamine. As a panel of this court stated in United States v. Davidson, 195 F.3d 402 (8th Cir. 1999), cert. denied, 528 U.S. 1180 (2000), "[a] necessary element of conspiracy to manufacture methamphetamine is knowingly joining such a conspiracy, and [defendant's] recent convictions for possession of methamphetamine were relevant to prove that." Id. at 408. We note that even if the district court had determined the methamphetamine involved in the 1997 conviction to be a personal use amount, the prior possession regardless of amount would be admissible to illustrate Arias's intent here. See United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000) (concluding that possession of even personal use amounts of drugs is admissible to later demonstrate a defendant's intent to distribute). Moreover, the district court gave an instruction to the jury limiting its use of the prior conviction evidence to only the issues of Arias's knowledge and intent. Admission of this evidence was not an abuse of discretion.

Arias maintains that the district court further abused its discretion by excluding evidence discrediting the government's key witness, Perez-Rodriguez. Sergeant Steve Johnson, a former Sioux Falls narcotics detective, testified that he was involved in the arrest and prosecution of Perez-Rodriguez in 1996 for possession of methamphetamine. Defense counsel at trial asked Johnson if Perez-Rodriguez had disclosed his drug source during the 1996 investigation and whether, at that time, Johnson had found indicia of drug trafficking such as money orders, mail transactions, or any evidence of shipping of money, suggesting Perez-Rodriguez was receiving drugs from South Sioux City. Defense counsel attempted to imply through Johnson's testimony that the lack of such evidence was proof that Perez-Rodriguez was not truthful about Arias being his supplier. The district court, however, refused to allow Johnson to testify "to some conclusion he had in some case in 1996." (Trial Tr. at 259.)

Contrary to Arias's argument, Perez-Rodriguez's alleged dishonesty was laid before the jury when he admitted on the witness stand that he had not been truthful to

law enforcement officers during their investigation of Arias, and that if it was necessary, he would lie to help himself. Arias was free to ask Perez-Rodriguez anything he wished concerning his untruthfulness and whether Perez-Rodriguez received drugs from Arias in 1996, but Arias never cross-examined Perez-Rodriguez on the issue. We are unable to see any abuse of discretion in the district court's handling of this matter and conclude that Johnson's testimony was collateral impeachment under Federal Rule of Evidence 608(b).

Finally, Arias argues that where the mandatory minimum sentence is increased through a district court's finding of drug quantity, the holding of Apprendi v. New Jersey applies. Given the circumstances presented in this case, we disagree. As a result of Arias's prior conviction, for which the government had filed its motion pursuant to 21 U.S.C. § 851 (1994), he was exposed to a statutory maximum sentence of thirty years imprisonment regardless of drug quantity under 21 U.S.C. § 841(b)(1)(C). Apprendi is simply immaterial here because the district court imposed a sentence of twenty-three years. See, e.g., United States v. Aguayo-Delgado, 220 F.3d 926, 934 (8th Cir.) (holding sentence within the statutory range authorized by § 841(b)(1)(C) without reference to drug quantity was permissible under Apprendi v. New Jersey), cert. denied, 121 S. Ct. 600 (2000).

III.

Accordingly, we affirm the judgment and the sentence imposed by the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.