# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3747

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Phelix Henry Frazier, also known as | * |
| Towman, also known as Tow, | * |
| also known as Phe, also known as | * |
| Daddy, also known as Blue, | * |
| also known as Reuben Matthews, | * |
| | * |
| Appellant. | * |

_____

No. 98-3748

_____

Appeals from the United States
District Court for the
Eastern District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Darren Thomas, also known as DT, | * |
| | * |
| Appellant. | * |

_____

No. 98-3860
_____

United States of America,             *
                                     *

       Appellee,          *
                                     *

   v.                    *
                                     *

Joe Robinson,               *
                                     *

       Appellant.        *


_____

No. 98-3926
_____

United States of America,             *
                                     *

       Appellee,          *
                                     *

   v.                    *
                                   *

Phelix T. Frazier, also known as   *
Little Phe, also known as Phe Phe,  *
                                     *

       Appellant.        *


_____

Submitted: March 12, 2001

Filed:
_____

Before HANSEN and HEANEY, Circuit Judges, and TUNHEIM,[1] District Judge.
_____

HANSEN, Circuit Judge.

A federal grand jury returned an indictment alleging that Phelix H. Frazier, Sr., his son, Phelix T. Frazier,[2] Darren Thomas, and Joe Robinson, along with 19 other defendants, operated a large-scale heroin distribution operation in St. Louis, Missouri. A federal trial jury found the four guilty of conspiracy to distribute drugs and of other related violations. The defendants argue on appeal that their convictions and sentences are invalid. We affirm.

## I. Background

Frazier, Sr. was arrested in San Diego, California, in March 1990 when he attempted to purchase approximately two kilograms of cocaine. Following his arrest, he pleaded guilty to conspiring to possess with intent to distribute cocaine, and he served over four and a half years in a federal prison in California. While incarcerated there, Frazier, Sr. learned of a large-scale supplier of heroin, Jesse Lewis, who resided in San Francisco. Following Frazier, Sr.'s release from prison, he returned to St. Louis to begin reestablishing himself in the narcotics trafficking business.

Frazier, Sr. made his first trip to San Francisco to meet Lewis shortly after his release from prison. On the first trip, he purchased several ounces of good and affordable black tar heroin, and Lewis proved himself to be a reliable supplier.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

[2]To reduce confusion, we refer to the Fraziers as "Frazier, Sr." and "Frazier, Jr."

3

Frazier, Sr. thereafter traveled to San Francisco once or twice per month. He began purchasing 5-ounce quantities of pure heroin at a time, but as his St. Louis operation's sales increased he later purchased 10-ounce quantities and, ultimately, 20-ounce quantities. Frazier, Sr. personally made the trips to San Francisco to purchase the drug.

Back in St. Louis, Frazier, Sr. and his cohorts developed an organized and complex enterprise to market the heroin and to avoid interference by law enforcement. Over the course of the conspiracy, Frazier, Sr. and the others established several drug-distribution locations throughout St. Louis, but distributed out of only two or three locations at a time, rotating them frequently to avoid detection. In addition, they kept the locations open for business only during specific and limited hours during the day. The organization utilized cell phones, pagers, and call forwarding to insure that users were able to contact the location from which the sales were being made. Frazier, Sr. also established a phony towing company, AM PM Towing, which he used to launder money earned through drug sales. The company's shop also functioned as a distribution location.

Frazier, Sr. designated someone to operate each particular drug-distribution location and that person in turn supervised the drug activities and others employed at the location. Actual sales to users did not occur at the distribution locations. Instead, an individual employed there mixed the heroin with a diluent to attain a street-level purity, or "cut" the heroin, and packaged it into empty, clear capsules (a signature of Frazier Sr.'s operation) to be sold to users. Users then called in their orders to someone employed to answer calls and take orders at the location. The order taker would document the order in writing and arrange a delivery at some designated meeting place, and a runner would deliver the drug. Each capsule sold for $10, and each location sold between $1500 and $6000 worth of heroin per day. DEA agents estimated that the operation supplied over 60% of the heroin being sold in St. Louis. As a service to their customers, Frazier, Sr.'s locations also supplied cocaine

4

in capsule form, but the volume of cocaine sold was much less than the volume of heroin.

Robinson, Thomas, and Frazier, Jr. performed various roles in Frazier, Sr.'s operation. Robinson started as a runner, was promoted to an order taker and later was given the responsibility of mixing the heroin at several locations. Thomas, in contrast, entered the operation in the fall of 1996. Frazier, Sr. knew Thomas from the time they had spent together in a halfway house following their releases from prison, and he immediately placed Thomas in charge of a new location on North Grand. Thomas recruited two individuals, Andre Jones and Carla Crocker, to assist him in operating the location. Frazier, Jr. monitored the operation's activities when his father was out of town purchasing heroin.

Around the time Thomas opened the North Grand location, state and federal law enforcement officers began investigating Frazier, Sr.'s activities. As one of the first steps, the officers obtained permission to install a pen register on the phone at Thomas's location. Over 26,000 calls were logged in a three-month period. Through information gained in the investigation, the officers sought and received permission to install several wiretaps at various drug-distribution locations and on phones used by members of the operation. Investigators installed the first wiretap at the North Grand location in March 1997, sometime after Thomas's supervised release had been revoked for using heroin. Frazier, Sr.'s niece took over the North Grand operation after Thomas was no longer available.

In late May 1997, agents intercepted a call in which Frazier, Sr. informed Lewis that he would be traveling to San Francisco for more drugs. On his return trip on May 23, officers apprehended Frazier, Sr. at the airport and seized 20 ounces of black tar heroin that had been strapped to his body. The agents released him from custody, and shortly thereafter, Frazier, Sr. called Lewis and ordered 15 more ounces of pure heroin. He also made arrangements to transfer various property from his

5

name into the names of others, and he placed an order for a false identification. On May 30, agents again apprehended Frazier, Sr. as he arrived in Kansas City on a return flight from California. The officers seized 15 ounces of black tar heroin, which was contained in Frazier, Sr.'s companion's suitcase. The investigation ultimately culminated in the execution of 28 search warrants, yielding the seizure of drugs, drug paraphernalia, weapons, and drug ledgers.

The grand jury returned a superceding indictment charging 24 defendants with various violations of federal law. Twenty of the named defendants pleaded guilty, and the remaining four defendants who appeal here were tried together beginning in late July 1998. Following the dismissal of one juror during deliberations because of a family emergency, the remaining jurors returned a verdict in early August 1998, finding the four defendants guilty of the charge that they conspired to distribute or possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846. The jury also found Frazier, Sr. guilty of engaging in a continuing criminal enterprise (CCE), see 21 U.S.C. § 848(a), of being a felon in possession of a weapon, see 18 U.S.C. § 922(g), and of eleven other violations relating to his drug-distribution activities. The jury found Robinson guilty of an additional count of possession with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 841(a)(1), and found in favor of the government on two criminal forfeiture counts. The district court[3] subsequently sentenced the defendants and ordered the forfeiture of Frazier, Sr.'s home, the property at which AM PM Towing was located, a restored 1937 Buick, and various amounts of cash seized during the investigation.

---

[3]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

## II. Defendants' Convictions

The defendants raise numerous issues on appeal which they argue require us to overturn their convictions. The majority of the issues take the form of a challenge to the evidence offered by the government to prove the existence of the conspiracy and to prove the defendants' involvement. Some of the defendants also argue their convictions are invalid because they were based on the verdict of only eleven jurors, and Thomas argues the district court erred when it refused to try him separately. We conclude for the reasons stated below that the defendants' convictions are valid.

### A. Motion to Sever

Under Federal Rule of Criminal Procedure 14, a district court may grant a motion to sever the trial if a defendant shows that he would be prejudiced by a joint trial. We review a district court's refusal to sever for an abuse of discretion. See, e.g., United States v. Patterson, 140 F.3d 767, 774 (8th Cir.), cert. denied, 525 U.S. 907 (1998). To succeed on appeal a defendant must show that he was clearly prejudiced by the joint trial. Id. We have said many times that it will be the rare case, if ever, where a district court should sever the trial of alleged coconspirators. See, e.g., id. We conclude that Thomas's situation does not fall within that rare exception, if one exists.

In short, Thomas claims prejudice because, as he argues, the government's case against him was strengthened by the substantial and highly incriminating wiretap evidence which implicated others but which did not show that he was invovled. Severance, however, is not required merely "because the evidence may have been more damaging against one appellant than the others," United States v. Pou, 953 F.2d 363, 369 (8th Cir.) (internal quotations omitted), cert. denied, 504 U.S. 926 (1992), or because evidence established that a conspirator was not involved during the entire duration of the charged conspiracy. Any concern that the evidence implicating the

other codefendants would spill over and prejudice Thomas was minimized by the district court's instruction to the jury to view the evidence presented against one defendant as applicable to only that defendant. See United States v. Moore, 149 F.3d 773, 778 (8th Cir.), cert. denied, 525 U.S. 1030 (1998).

## B. Wiretap Evidence

Frazier, Sr. complains of the wiretap evidence. He argues the district court should have granted his motion to suppress tape-recorded phone conversations and any other evidence obtained as a result of the government's wiretaps. In a pretrial motion, Frazier, Sr. sought a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), alleging that the government's affidavits supporting its request for wiretaps and its requests to extend their use contained false statements. He did not identify the alleged falsehoods in his motion, nor did he do so at a pretrial motion hearing when the magistrate judge invited him to present evidence on the issue. As a consequence, the magistrate judge concluded in his report and recommendation that Frazier, Sr.'s Franks claim lacked merit.

In his objections to the report and recommendation, Frazier, Sr. alleged for the first time that suppression was required because the attesting officer made deliberate falsehoods in the affidavits in order to establish the necessity for using wiretaps.[4] In support, he identified a statement that searches concerning Frazier, Sr. "and associates" undertaken in 1991 and 1992 had been essentially unsuccessful. (Frazier,

---

[4]To secure authorization for a wiretap, the government must identify the investigative procedures it has employed (or identify for what reason none have been taken), 18 U.S.C. § 2518(1)(c), and the court must find that "normal investigative procedures" have failed, or are reasonably likely to fail, or are otherwise too dangerous to attempt, id. § 2518(3)(c). This prerequisite is generally referred to as the "necessity" requirement. See, e.g., United States v. Shaw, 94 F.3d 438, 441 (8th Cir. 1996), cert. denied, 519 U.S. 1100 (1997).

8

Sr.'s App. at 89, 128, 175, 215, 260.) According to him, the statement was a deliberate falsehood because he had been incarcerated in California from 1991 through 1994 and could not have been the subject of a search during the time period identified. He also complained of the affidavits' summary section which stated that confidential sources existed "on the fringe of [the] organization and [had] no direct contact with mid- or high-level members of [the] organization." (Frazier, Sr.'s App. at 126, 173, 213, 258.) Frazier, Sr. claimed the statement was false because some affidavits noted elsewhere that three informants routinely ordered drugs from Frazier, Sr. and Thomas over the phone, and later affidavits explained that one informant had been hired by the organization to answer phones and take drug orders. He argued to the district court that the officer's own affidavits therefore showed that the informants had made "direct contact" with high-level members of the conspiracy. The district court adopted the report and recommendation over Frazier's objections and denied the motion to suppress.

We agree with the government that the Franks issue was not timely raised before the district court. Under Fed. R. Crim. P. 12(b)(3), a suppression issue must be raised before trial, and the failure to raise the issue in a timely pretrial motion results in "waiver" of the matter under Rule 12(f). Frazier, Sr. concedes he was late in raising the issue but contends we may still review the alleged Franks violation for plain error under Rule 52(b). His argument raises the interesting question of whether a court of appeals is barred altogether from reviewing an issue that has been "waived" under Rule 12(f). Compare United States v. Weathers, 186 F.3d 948, 955 (D.C. Cir. 1999) (concluding that plain error review under Rule 52(b) of a "waived" issue would render Rule 12(f) meaningless), and United States v. Chavez-Valencia, 116 F.3d 127, 129-30 (5th Cir. 1997) (holding that Rules 12(b)(3) and 12(f), along with circuit precedent, barred defendant who failed to raise a suppression issue before the district court from raising the issue for the first time on appeal), with United States v. Buchanon, 72 F.3d 1217, 1227 (6th Cir. 1995) (concluding plain error review of an issue "waived" under Rule 12(f) was permitted).

9

As interesting as the issue is, we decline to join the debate because we find no merit to Frazier, Sr.'s Franks claim under any review. To prevail on a Franks challenge, a defendant must show: "(1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit, and (2) that the affidavit's remaining content is insufficient to establish probable cause." United States v. Milton, 153 F.3d 891, 896 (8th Cir. 1998) (internal quotations omitted), cert. denied, 525 U.S. 1165 (1999). Frazier cannot establish the first required showing.

The attesting officer merely erred in documenting the time frame of the searches identified in the affidavits. Frazier, Sr. was the subject of a search in 1990, and three coconspirators had been the subject of searches in 1991. Thus, the relevant time period of the searches was 1990 to 1991, not 1991 to 1992. This minor discrepancy is insufficient to establish that the attesting officer acted deliberately or recklessly in making the statements. See United States v. Searcy, 181 F.3d 975, 980 (8th Cir. 1999) (noting that minor errors are insufficient to establish deliberate falsehoods). So, too, are the officer's statements about the role of confidential informants in the investigation. The attesting officer fully explained in the affidavits that informants were able to place orders with Frazier, Sr. and Thomas via the telephone but had been unable to meet face to face with them. At worst, the officer's use of the term "direct" in the summary section reflects no more than a poor word choice on his part. The officer also forthrightly informed the court in later affidavits that one informant had become employed as an order taker at one of Frazier's distribution locations. Although the officer did not modify the summary paragraph to reflect something more than fringe contact by one of the informants, the internal and innocuous discrepancy in the affidavits is insufficient to support Frazier, Sr.'s

<u>Franks</u> challenge.  <u>Cf.</u> <u>United States v. Schmitz</u>, 181 F.3d 981, 986 (8th Cir. 1999) (stating that <u>Franks</u> does not apply to negligent misrepresentations).[5]

## C. Evidence of Other Crimes, Wrongs, or Acts

Frazier, Sr. and Thomas both argue for different reasons that the district court erred in admitting evidence of their prior unlawful drug activity under Federal Rule of Evidence 404(b).  On the morning of trial, Frazier, Sr. filed a motion in limine and an offer to stipulate to his prior drug felony conviction for purposes of establishing his felon status under 18 U.S.C. § 922(g).  The motion was not presented to the district judge until after the judge had begun to voir dire the prospective jurors.  The district court denied the motion and the offer during voir dire examination, after it was brought to the court's attention, because by that time the prospective jurors had already been informed of the government's intention to prove Frazier, Sr.'s status as a felon.  The district court again ruled on the issue when Frazier, Sr. raised it during trial, reiterating in a written order that the motion and offer to stipulate were untimely and nonmeritorious in any event because evidence of the conviction and Frazier, Sr.'s California drug purchase was admissible under Rule 404(b).  On appeal, Frazier, Sr. argues the district court was obligated to accept his stipulation and was required to bar any evidence of the California events based on <u>Old Chief v. United States</u>, 519 U.S. 172 (1997).

At best, as we have already discussed, we review Frazier, Sr.'s challenge to the prior bad act evidence for plain error because he failed to file a timely suppression motion.  The Supreme Court held in <u>Old Chief</u> that the district court abused its discretion in refusing a defendant's offer to stipulate to his status as a felon under

---

[5]Frazier, Jr. also attempts to raise the wiretap issue on appeal, but we find nothing in the record showing that he raised the issue before the district court. Nevertheless, his argument fails for the same reasons.

§ 922(g) because the risk of prejudice outweighed the probative value of the prior-conviction evidence.  See 519 U.S. at 191.  We have recognized, however, that Old Chief does not control a case where the prior-conviction evidence is offered to prove an issue which Rule 404(b) specifically permits to be proven by other crimes evidence, assuming the issue is relevant and subject, of course, to Rule 403 balancing.  See United States v. Hill, 249 F.3d 707, 713 (8th Cir. 2001).

Evidence is admissible under Rule 404(b) if: "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value."  United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000) (internal quotations omitted).   We have held on numerous occasions that a prior conviction for distributing drugs, and even the possession of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs.  See, e.g., id.; United States v. Bryson, 110 F.3d 575, 583 (8th Cir. 1997).  The evidence of Frazier, Sr.'s prior drug activity showed that he traveled to California to purchase a large quantity of drugs, an activity which is substantially similar in kind to the conduct the government alleged he committed in the current conspiracy.  See United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995) (finding evidence indicating previous involvement in large-scale distribution activities sufficiently similar to present charge of involvement in large-scale distribution activities).  The government charged the onset date of the conspiracy here as sometime around January 1995, thus only five years (over four and a half of which he spent in prison) separated Frazier, Sr.'s alleged current criminal conduct and his past conduct, rendering the past conduct well within the bounds of admission.  See Hardy, 224 F.3d at 757 (recognizing that six-year-old conviction is not too remote for introduction under Rule 404(b)); see also United v. Green, 151 F.3d 1111, 1114 (8th Cir. 1998) (citing instances where 12, 13, and 17 years separated prior crimes found to be admissible).  In these circumstances, the district court committed no error, let alone

12

plain error, in rejecting the offer to stipulate and in admitting evidence of the California incident.

Unlike Frazier, Sr., Thomas properly preserved the Rule 404(b) issue. At trial, the government offered evidence that an officer had seized a packet of cocaine from Thomas's pocket during a 1990 traffic stop and that Thomas sold heroin to an undercover officer on four occasions during a month-long investigation in 1991. Thomas was not charged with a crime in relation to the traffic stop but was later convicted of distributing heroin in relation to the 1991 investigation. The district court ruled that the evidence was admissible under Rule 404(b) to establish Thomas's intent, knowledge, and motive to commit the crime charged. Thomas argues the district court abused its discretion in allowing the evidence because the events were unrelated to the charged crime and were too remote in time to be admissible under Rule 404(b).

When it has been properly preserved, we review the district court's Rule 404(b) ruling for an abuse of discretion; "we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Brown, 148 F.3d 1003, 1009 (8th Cir.1998), cert. denied, 525 U.S. 1169 (1999). Thomas's prior conviction and possession of drugs were particularly relevant to rebuff Thomas's argument at trial that he did not knowingly join the conspiracy but was only present because those involved were his longtime friends. See Shoffner, 71 F.3d at 1432. And, because less than seven years separated the traffic stop, the earliest event, from the time the government charged that he joined the conspiracy, we reject Thomas's argument that his prior unlawful conduct was too remote.

Thomas asserts with respect to the traffic stop that the district court permitted the officer to testify to matters beyond his own conduct, which bore solely on his propensity to commit the crime charged. We respectfully disagree. The testimony

13

surrounding the stop, including the anonymous tip that led to the stop and the seizure of drugs from persons with Thomas, were necessary for the jury to ascertain whether the prior event actually occurred and to gauge the extent of Thomas's prior involvement with controlled substances. Moreover, the district court thoroughly instructed the jury on the appropriate purpose of the officers' testimony, thereby alleviating its prejudicial impact. See United States v. Benitez-Meraz, 161 F.3d 1163, 1166 (8th Cir. 1998). We accordingly conclude that the district court did not abuse its discretion in admitting evidence of Thomas's prior unlawful drug activity.

## D. Coconspirator Testimony

Frazier, Sr. argues the district court erred in admitting Andre Jones's testimony about conversations Jones had with Thomas and Frazier, Sr. The conversations occurred during the course of the conspiracy and related to the organization's activities. The district court ruled that Jones's testimony involved nonhearsay statements of a coconspirator and was admissible under Fed. R. Evid. 801(d)(2)(E). "Coconspirator statements are properly admitted if the government proves by a preponderance of the evidence that (1) a conspiracy existed; (2) both the declarant and the defendant were members of the conspiracy; and (3) the declarant made the statement in the course and in furtherance of the conspiracy." United States v. Arias, 252 F.3d 973, 977 (8th Cir. 2001). We review a district court's decision to admit coconspirators' statements under Rule 801(d)(2)(E) for an abuse of discretion. See id.

During trial, Officer Jerry Leyshock testified that Jones provided him with the location of one of Frazier, Sr.'s distribution points and told him when sales would be made at that location. Frazier, Sr. argues, therefore, that Jones's testimony about the statements made to him by Thomas and Frazier, Sr. was inadmissible because Jones was a government informant operating to defeat the object of the conspiracy. Whether Jones was a member of the conspiracy or was acting in furtherance of the

14

conspiracy, however, is irrelevant to whether the out-of-court statements to which he testified are admissible under Rule 801(d)(2)(E).  See United States v. Williamson, 53 F.3d 1500, 1519 (10th Cir. 1995) ("Rule 801(d)(2)(E) . . . does not embody a requirement that the statement in question be made by a conconspirator to a coconspirator." (internal quotations omitted)); United States v. Mealy, 851 F.2d 890, 901 (7th Cir. 1988) ("[T]he fact that one party to the conversation was a government informant does not preclude the admission of the coconspirator's statements under Rule 801(d)(2)(E).").  The relevant questions are (1) whether the declarant, and the defendant against whom the statements are offered, are members of the conspiracy, and (2) whether the declarant made the statements in the course of and in furtherance of the conspiracy.  Both Frazier, Sr. and Thomas, the declarants, were members of the conspiracy, and they made the out-of-court statements to which Jones testified in the course of and in furtherance of the conspiracy.  Of course, Frazier, Sr.'s own statements to Jones, as testified to by Jones, would be nonhearsay because they are Frazier, Sr.'s own admissions and were admissible under Rule 801(d)(2)(A).

Frazier, Sr. also argues that Officer Leyshock's testimony concerning the information Jones supplied to him was inadmissible under Rule 801(d)(2)(E) because Jones's statements to Officer Leyshock were not in furtherance of the conspiracy.  We agree that Jones's out-of-court statements as related by Officer Leyshock do not fall within the coconspirator rule, although any error in admitting them was harmless because Jones himself testified in detail about the information he provided to Officer Leyshock and was subject to cross examination about it.  See United States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000) (holding that post arrest statements made by coconspirator to law enforcement officer were not admissible under Rule 801(d)(2)(E), but admission of testimony was harmless because officer's testimony was cumulative), cert. denied, 121 S. Ct. 1968 (2001).

## E. Transcripts' Identification of Speakers

Frazier, Sr., Frazier, Jr., and Robinson argue the district court erred in permitting the jury to view transcripts of recorded conversations while the recordings were played during trial. They objected at trial to the transcripts' purported identification of the speakers heard in the recordings. The district court overruled their objection and instructed the jury that the recordings, not the transcripts, constituted evidence and that the transcripts were merely provided for the limited purpose of aiding them in following the conversations and in identifying the speakers. The district court further instructed the jury that if it found any variance between the recordings and the transcript, the recordings controlled.

The decision to permit the use of transcripts to aid the jury in listening to tape-recorded conversations lies within the sound discretion of the district court, United States v. Bentley, 706 F.2d 1498, 1507 (8th Cir. 1983), and we review the decision for an abuse of discretion, United States v. Calderin-Rodriguez, 244 F.3d 977, 987 (8th Cir. 2001). We find no abuse of discretion in this case because, contrary to the defendants' arguments, there was a sufficient foundation supporting the identifications of the speakers. The foundation was established through the testimony of DEA Special Agent David Turner, the case agent responsible for the wiretap investigation. Agent Turner testified that he was familiar with the speakers' voices through his work with the wiretaps. He also explained during his testimony about how he identified the speakers, how he prepared the transcripts, and how he proofread the transcripts by comparing them to the actual tape-recorded conversations. See United States v. McMillan, 508 F.2d 101, 105 (8th Cir. 1974) ("If accuracy [of the transcript] remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents."), cert. denied, 421 U.S. 916 (1975).

16

The defendants' assertion that the identifications were unreliable because some of the responsibility for determining the identity of the speakers was delegated to other agents goes to the weight to be given the identifications. Agent Turner testified that he had reviewed <u>all</u> of the transcripts for their accuracy. Moreover, the defendants' accuracy challenge is hampered by their failure to point to any specific misidentification in the transcripts. Where a district court has not admitted transcripts of recorded conversations into evidence and has properly instructed the jury on the permissible use of those transcripts, we must assume their accuracy unless the defendants can point to some specific inaccuracy for us to consider. <u>See</u> <u>United States v. Britton</u>, 68 F.3d 262, 264 (8th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1105 (1996).

The defendants argue the jury was not properly instructed on the permissible use of the transcripts because the district court did not specifically inform the jury that the jury, not the person or persons who transcribed the recordings, was ultimately responsible for identifying the speakers heard in the recordings. The defendants did not object to the initial instruction given when the transcripts were offered, but even if the district court's initial instruction was not sufficiently clear to inform the jury that it was obligated to independently determine the speakers' identities, the instructional error was harmless. Prior to the jury's deliberations, the district court instructed the jury pursuant to Eighth Circuit Model Criminal Jury Instruction § 2.06 (2000), which unquestionably explains that the jury must determine whether the transcripts correctly identified the speakers heard in the recordings. <u>See</u> <u>United States v. Jacobs</u>, 97 F.3d 275, 278 (1996) (concluding that earlier instructional error was harmless where subsequent instruction properly informed the jury of its obligation). Because the defendants point to no specific error in the identifications, and because a sufficient foundation existed supporting the identifications, we find no abuse of the district court's discretion in its decision to permit the jurors to view the transcripts.

## F. Verdict of Eleven Jurors

Frazier, Sr., Frazier, Jr., and Robinson contend the trial court erred in accepting the verdict of an eleven-person jury. During the jury's deliberations, a juror received a call notifying him that his father had suffered a severe medical emergency and was not expected to live. The district court determined that the circumstances amounted to just cause under Fed. R. Crim. P. 23(b) and dismissed the juror from further deliberations.[6] All four defendants objected and moved for a mistrial. The district court denied the motions, and the eleven remaining jurors returned the guilty verdicts.

The defendants argue that Rule 23(b) is unconstitutional on its face because it violates a defendant's right to a unanimous verdict by a twelve-person jury. In United States v. Armijo, 834 F.2d 132 (8th Cir. 1987), cert. denied, 485 U.S. 990 (1988), however, our court upheld the constitutionality of the rule. "The constitutionality of a jury consisting of fewer than twelve members was established in Williams v. Florida, 399 U.S. 78, 103, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970), and it follows that [Rule 23's] provision for an eleven-person jury when one juror has been excused for cause is constitutionally permissible." Armijo, 834 F.2d at 134. Other courts that have addressed the issue have concluded similarly. See United States v. Barone, 114 F.3d 1284, 1308 n.21 (1st Cir. 1997); United States v. Ahmad, 974 F.2d 1163, 1164 (9th Cir. 1992); United States v. Smith, 789 F.2d 196, 205 (3d Cir. 1986); United States v. Stratton, 779 F.2d 820, 831 (2d Cir. 1985).

The defendants claim alternatively that the district court improperly exercised its discretion in dismissing the juror. They suggest that the court should have suspended deliberations until the dismissed juror could have confirmed with certainty

---

[6]Rule 23(b) provides: "Even absent . . . stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors."

18

after he had visited the hospital that he would be unable to return. Rule 23(b) expressly provides that the district court's decision to dismiss a juror for just cause is discretionary, and our review is limited to whether the dismissal amounted to an abuse of that discretion. See United States v. McFarland, 34 F.3d 1508, 1511 (9th Cir. 1994), cert. denied, 515 U.S. 1107 (1995). The information provided to the district court was that the juror's father's death was imminent, creating substantial uncertainly as to whether or when the juror would be available for further deliberations. Furthermore, the trial had lasted nine days and involved a substantial amount of testimony by numerous witnesses and much documentary evidence. If the district court would have declared a mistrial, the result would have been a waste of judicial resources. Rule 23(b) is available for just the type of situation that occurred here, and the district court certainly did not abuse its discretion in utilizing it.

## III. Sentencing Matters

We now turn to the defendants' arguments that the district court erred in imposing the sentences they received. Thomas argues the district court incorrectly determined his sentence under the Sentencing Guidelines, and all four defendants argue their sentences violate Apprendi v. New Jersey, 530 U.S. 466 (2000), because the jury made no specific drug quantity finding. For the reasons that follow, we affirm the defendants' sentences.

### A. Thomas's Guidelines Sentence

The district court determined at Thomas's sentencing hearing that he was accountable for between 10 and 30 kilograms of a substance containing heroin during the period of his involvement in the conspiracy, supporting a base offense level of 36. The court enhanced his sentence three levels for his role as a manager or supervisor and two levels for possessing a dangerous weapon, resulting in an adjusted base offense level of 41. Based on a criminal history category V, the district court

19

sentenced Thomas to 480 months imprisonment (within the 360 months to life range authorized by the Guidelines).  Thomas challenges his sentence on the grounds that the district court made an erroneous drug-quantity finding when it determined his offense level and erred in imposing the role and weapon enhancements.

The Guidelines permit a district court to approximate the quantity of drugs for sentencing purposes where, as with Thomas, there has been no direct seizure of drugs directly establishing the relevant amount.  See U.S. Sentencing Guidelines Manual § 2D1.1 n.12 (1995)[7]; see also Brown, 148 F.3d at 1008.  When challenged on appeal, we review the district court's drug-quantity determination for clear error.  See United States v. Granados, 202 F.3d 1025, 1028 (8th Cir. 2000).  "Defendants who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse [the] determination . . . only if the entire record definitely and firmly convinces us that a mistake has been made."  United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994).[8]

Thomas's drug-quantity challenge is twofold.  First, he argues the district court's drug-quantity finding was inflated because the court utilized drug-sales estimates that were excessive in light of the evidence presented at trial.  Second, he argues the entire conspiracy's output was unforeseeable to him, and his quantity finding should have been based solely on sales from the North Grand location that he supervised.  We find no merit to either argument.  The district court's quantity estimates were reasonable and supported by the testimony of coconspirator Brian

---

[7]The defendants were sentenced under the 1995 edition of the Sentencing Guidelines.

[8]The Sales court held that drug quantity is not an element of the offense.  25 F.3d at 711.  That is no longer true in every case after the Supreme Court's decision in Apprendi.  Apprendi, however, does not affect the nature of our review when a defendant's challenge is directed solely at the district court's application of the Guidelines.

20

Heard. Heard testified at trial that Thomas ran Frazier, Sr.'s location on North Grand for approximately four or five months. He further testified that each of Frazier, Sr.'s locations distributed between 12 and 15 grams of uncut heroin per day. Assuming Thomas was involved for four months and the heroin was diluted before it was distributed at a ratio of 6 parts filler to 1 part heroin, as Heard testified it was, the operation would have distributed a total of 26.9 to 33.6 kilograms of a substance containing heroin, even if only two locations had been open each day during Thomas's involvement. On this record, it was not clear error for the district court to find that Thomas was accountable for between 10 and 30 kilograms.

We likewise conclude that the district court did not clearly err in finding that the sales made at the other distribution locations were reasonably foreseeable to Thomas. The evidence showed that Thomas not only established one location but that he recruited others into the conspiracy, that he was present at other distribution locations either to pick up drugs or for other reasons related to the operation's activities, and that he procured a large volume of empty capsules (approximately 22,000 capsules) to be used in selling heroin. Thus, he was intricately involved in Frazier, Sr.'s operation and was well aware of its scope, justifying the district court's foreseeability finding. See United States v. Padilla-Pena, 129 F.3d 457, 468 (8th Cir. 1997) (affirming attribution of entire conspiracy's drug distribution activities where defendants were "central figures" in the conspiracy), cert. denied, 524 U.S. 905 (1998). To Thomas's benefit, the district court's quantity estimate was conservative in all respects and did not amount to clear error.

The evidence of Thomas's involvement is also sufficient to support the district court's decision to enhance his sentence for his role as a manager or supervisor pursuant to USSG § 3B1.1(b). Factors relevant to the enhancement include: "the nature of the defendant's role in the offense, the recruitment of accomplices, and the degree of participation in planning or organizing the offense." United States v. Jasper, 169 F.3d 1109, 1110 (8th Cir. 1999) (internal quotations omitted). Thomas

played a significant role in the offense by establishing the North Grand location and by recruiting others to operate that location. The evidence showed that he and Frazier, Sr. mixed and packaged the heroin at that location and that only he and Frazier, Sr. had access to the supply of heroin stored there. Furthermore, Heard along with two other coconspirators, testified at trial that Thomas was in charge of the North Grand operation. Based on the entire record, the district court's three-level enhancement was not clearly erroneous.

Finally, Thomas contends the district court committed clear error in enhancing his sentence for possession of a weapon under USSG § 2D1.1(b)(1). "At sentencing, the burden is on the government to show by a preponderance of the evidence that a dangerous weapon was present and that it was not clearly improbable that the weapon had a nexus with the criminal activity"; mere presence of a weapon is insufficient to warrant the enhancement. United States v. Betz, 82 F.3d 205, 210 (8th Cir. 1996). We review a district court's factual findings and application of § 2D1.1(b)(1) for clear error. Brown v. United States, 169 F.3d 531, 532 (8th Cir. 1999).

Based on the trial testimony of Andre Jones, the presentence investigation report recommended the weapons enhancement. Jones testified at trial that a "raggedy shotgun" was kept in a closet at the North Grand location but that those involved in the conspiracy did not "believe in weapons." (Trial Tr., Vol. 3B at 226.) The district court overruled Thomas's objection to the enhancement, concluding that Jones's testimony was sufficient to support it. Thomas argues Jones's testimony failed to establish that the weapon was present during his tenure at the North Grand location or that the weapon was loaded or even operational.

While Jones's testimony is not crystal clear as to the specific time period when the weapon was kept at the North Grand location, we cannot say we are left with the "definite and firm conviction" that the weapon was not present when Thomas operated the location. United States v. Williams, 109 F.3d 502, 509 (8th Cir.)

22

(discussing when a sentencing court's factual finding amounts to clear error) (internal quotations omitted), <u>cert. denied</u>, 522 U.S. 917 (1997). In fact, there was evidence that a shotgun was seized at two other drug locations and that shotgun shells were seized at a third location, supporting an inference that shotguns were part of the modus operandi of a Frazier, Sr. drug house. As for the condition of the weapon, the government need not prove that a gun was loaded and ready for use to support a weapons enhancement; it must only show a connection between the gun and the drug activity.[9] We have said many times that such a connection is established if the weapon was stored in the same location as the drugs. <u>See, e.g.</u>, <u>United States v. Payne</u>, 81 F.3d 759, 763 (8th Cir. 1996). Here, Thomas concedes in his brief that the weapon and the drugs were stored together in the same closet. Consequently, the district court did not commit clear error in imposing the weapons enhancement.

## B. <u>Apprendi</u>

<u>Apprendi</u> requires that any fact (other than a prior conviction) which increases the penalty for a crime beyond the maximum penalty authorized must be submitted to the jury and found beyond a reasonable doubt. 530 U.S. at 490. Because the defendants did not object to the jury's failure to find drug quantity at trial, our review is limited to a search for plain error. <u>See</u> <u>United States v. Butler</u>, 238 F.3d 1001, 1005 (8th Cir. 2001). Under plain error review, the defendants first must show (1) error, (2) that the error was plain, and (3) that the error affected their substantial rights. <u>Id.</u> If they are able to make the initial three-part showing, we have the authority to notice and correct the error but only if it "seriously affects the fairness, integrity, or public

---

[9]The condition of the gun may certainly be relevant to determining whether the enhancement is warranted, but the government is not required to make a prima facie showing that the weapon was capable of being fired while it was in the defendant's "possession" to justify the enhancement. When one looks down the business end of the barrel of a shotgun, one naturally assumes it is both loaded and operable.

23

reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotations and alterations omitted).

Frazier, Jr.'s Apprendi claim is quickly disposed of because he is unable to show that the district court committed an error in imposing his sentence. Shortly after Apprendi was decided, our court held, in the context of 21 U.S.C. § 841(b)'s quantity-driven sentencing scheme, that a district court cannot impose a sentence in excess of the maximum penalty prescribed in § 841(b)(1)(C) if drug quantity 1) has not been charged in the indictment, and 2) has not been found by the jury. United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir.), cert. denied, 531 U.S. 1026 (2000). Because the jury made no quantity finding, the maximum penalty authorized for Frazier, Jr.'s offense of conviction was 20 years under § 841(b)(1)(C). The district court sentenced Frazier, Jr. to 10 years imprisonment, well below § 841(b)(1)(C)'s 20-year maximum, and thus a jury finding was not a prerequisite to the sentence he received.

Frazier, Sr.'s, Robinson's, and Thomas's Apprendi claims are not resolved so easily. The district court imposed a sentence on each defendant's conspiracy convictions that exceeded the maximum sentence authorized under § 841(b)(1)(C). The sentences are therefore erroneous after Apprendi. Thomas received a sentence of 480 months, Robinson received 380 months, and Frazier, Sr. received a sentence of life imprisonment based on the district court's quantity determinations.[10] We have held that such an error is both plain and affects a defendant's substantial rights. See Butler, 238 F.3d at 1005. But cf. United States v. Poulack, 236 F.3d 932, 938 (8th Cir. 2001 (concluding that Apprendi error did not affect defendant's substantial rights

---

[10]Frazier's and Thomas's presentence reports indicate that both have a prior drug felony conviction. Therefore, the maximum sentence they could have received without violating Apprendi was 30 years. See Arias, 252 F.3d at 979 (8th Cir. 2001) (recognizing that defendant with prior conviction may be sentenced to 30-year sentence under § 841(b)(1)(C) without offending Apprendi).

where defendant stipulated to quantity), cert. denied, No. 00-10546, 2001 WL 687473 (U.S. Oct. 1, 2001). But the government argues the error did not affect the fairness, integrity, or the public reputation of the proceedings based on the Supreme Court's decision in United States v. Johnson. In Johnson, the Supreme Court held that the failure to submit an element of the offense to the jury was insufficient to meet the final fourth prong of the plain error standard where evidence of the missing element was "overwhelming." 520 U.S. at 470. The government argues here that the evidence of drug quantity presented at trial was "overwhelming" because any reasonable jury would have found a sufficient drug quantity to support the sentences imposed.

A panel of our court recently rejected the government's suggestion that Johnson controls in the context of an Apprendi error, concluding instead that the error seriously affected the fairness, integrity, and public reputation of judicial proceedings. See United States v. Maynie, 257 F.3d 908, 920-21 (8th Cir. 2001). The Apprendi error in Maynie, however, involved not only the jury's failure to find drug quantity, but the government's failure to charge drug quantity in the indictment. The Maynie court reasoned that the deficient indictment resulted in a far more pervasive effect on the proceedings than the mere failure to submit an element of the offense to the jury because it affected the defendants' notice and grand jury rights under the Fifth and Sixth Amendments. Id. at 920-21. The government in this case charged defendants in the indictment with conspiring to distribute in excess of one kilogram of a mixture or substance containing heroin, an amount sufficient to trigger the highest statutory penalties available under § 841(b)(1)(A). The indictment thus authorizes the sentences the defendants received and renders Maynie's logic inapplicable here.

We are instead faced with a situation much like that in United States v. Anderson, 236 F.3d 427 (8th Cir.), cert. denied., No. 01-5186, 2001 WL 840333 (U.S. Oct. 9, 2001), where drug quantity was properly charged in the indictment. In Anderson, the court affirmed the sentences imposed by the district court despite the

jury's failure to make a specific drug-quantity finding. The court concluded the drug-quantity evidence presented at trial was overwhelming, id. at 429, and that it was inconceivable that any rational jury would have found fewer than five grams of methamphetamine, the quantity of drug necessary to impose a penalty within § 841(b)(1)(B)'s statutory range, id. at 430. Based on Anderson and Johnson, the outcome of our review for plain error therefore depends on the nature of the evidence presented at trial.

To support Thomas's and Robinson's sentences, the jury would have to had found them responsible for 100 grams of a mixture or substance containing heroin, see 21 U.S.C. § 841(b)(1)(B) (1994 & Supp. IV 1998), and for Frazier, Sr.'s sentence, at least a full kilogram, see id. § 841(b)(1)(A). We have no doubt that had the jury been properly charged it would have found drug quantities far in excess of these required amounts. For instance, the 35 ounces of pure black tar heroin seized from Frazier during May 1997, once diluted for sale, would have yielded well in excess of a kilogram (approximately 4.4 kilograms) of a mixture or substance containing heroin. On that evidence alone, no reasonable jury could have found a quantity less than one kilogram. As for Thomas and Robinson, there was a deluge of testimony and other evidence establishing the volume of heroin sold from Frazier, Sr.'s drug locations. Based on the thousands of recorded calls involving drug transactions, the extensive testimony of those involved in the conspiracy, and the testimony of the investigating officers, a very conservative estimate is that each location sold over 100 grams of heroin in a five-day period. We find it impossible that a jury which convicted Thomas and Robinson of conspiring to distribute heroin could have found them responsible for less than the 100 grams needed to authorize their sentences in light of the operation's obvious scale. Because the evidence overwhelmingly establishes a quantity of drug sufficient to authorize the sentences imposed, we conclude the jury's failure to find the amount of heroin did not seriously affect the

fairness, integrity, or public reputation of the proceedings.[11] Accordingly, we decline to order any resentencing.

We also find alternative bases to affirm Frazier, Sr's and Robinson's sentences. The jury also found Frazier, Sr. guilty on the CCE count, which carried with it a maximum penalty of life imprisonment, see 21 U.S.C. § 848(a) (1994), and the district court imposed a provisional life sentence on the CCE conviction. Although the district court's drug-quantity finding increased Frazier, Sr.'s Guidelines sentencing range, it had no effect on the maximum penalty available under § 848(a), and consequently the provisional life sentence does not offend Apprendi. See Santana-Madera v. United States, 260 F.3d 133, 141-42 (2d Cir. 2001); United States v. Hill, 252 F.3d 919, 921 (7th Cir. 2001).[12] If we reversed Frazier, Sr.'s sentence on the conspiracy count, his provisional life sentence on the CCE count would therefore take effect, and he would serve the same term of imprisonment to which he was initially sentenced on the conspiracy count.

In addition to Robinson's 380-month sentence on his conspiracy conviction, the district court imposed a concurrent 20-year sentence on his conviction for distributing heroin. If we reversed Robinson's sentence on the conspiracy count and remanded for resentencing, the district court would be required by the Guidelines to impose a 240-month sentence on the conspiracy count and an additional 140-month consecutive sentence on the distribution count, thereby resulting in the same total

---

[11]Defendants argue the jury's verdict was ambiguous because it did not specify whether the object of the conspiracy involved heroin or cocaine, although no objection was raised at trial. Because there was overwhelming evidence showing the necessary quantity of heroin, however, we also find no plain error in the jury's failure to identify the type of drug.

[12]21 U.S.C. § 848(a) provides for a mandatory minimum of 20 years and the sentence "may be up to life imprisonment" for persons convicted of "engaging in a continuing criminal enterprise."

punishment of 380 months. See USSG § 5G1.2(d). Our court has held there is no plain error where, upon remand to correct an Apprendi violation, § 5G1.2(d) would require consecutive sentencing resulting in the same total punishment previously imposed. See United States v. Sturgis, 238 F.3d 956, 960-61 (8th Cir. 2001), petition for cert. filed, No. 00-10804 (U.S. June 19, 2001); United States v. Caldwell, 255 F.3d 532, 533-34 (8th Cir. 2001). Because Frazier, Sr.'s and Robinson's sentences would remain unchanged even if the Apprendi violations were cured, we hold that neither their substantial rights nor the fairness, integrity, or public reputation of the proceedings were seriously affected.[13]

## IV. Conclusion

For the reasons set forth above, we affirm the defendants' convictions and sentences.

HEANEY, Circuit Judge, concurring.

I join in the majority's opinion as to Parts I, II, III.A and IV, but I write separately to express my concerns about the majority's reasoning in Part III.B as to appellant Thomas.

---

[13]The defendants have filed pro se briefs and motions to join in issues raised by their codefendants. We have explicitly addressed the Apprendi issue that three of the defendants attempted to raise pro se. We have reviewed the remaining arguments in their pro se briefs and considered the issues in which they seek to join, including Frazier, Sr.'s pro se challenge to the district court's forfeiture order, but find no merit to them. The defendants also argue the district court erred in permitting coconspirators who had been promised leniency by the government to testify. Our court, however has rejected this argument on numerous occasions. See, e.g., United States v. James, 172 F.3d 588, 592 (8th Cir. 1999) (rejecting defendant's reliance on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998)).

Apprendi mandates that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Today's decision recognizes that the trial court committed plain error by failing to put the issue of drug quantity to the jury, yet upholds Thomas's sentence because it does not result in a "miscarriage of justice." Johnson v. United States, 520 U.S. 461, 470 (1997) (citation omitted). I believe that the court's analysis in this case circumvents Apprendi and undermines the Sixth Amendment right to a trial by jury.

I see two central problems with the majority's analysis. First, as this court did in United States v. Anderson, 236 F.3d 427 (8th Cir. 2001), the majority applies the harmless error analysis from Johnson v. United States, 520 U.S. 461 (1997) to uphold Thomas's sentence. I do not believe, however, that Johnson supports the application of harmless error analysis to the Apprendi error in Thomas's case.

In Johnson, the Supreme Court decided that despite the jury's failure to decide the issue of materiality in a perjury case, reversal was not warranted because the error did not seriously affect the "fairness, integrity or public reputation of the judicial proceedings." 520 U.S. at 470. The Court found the error harmless because evidence of materiality was essentially uncontroverted at trial. The petitioner was found guilty of making false statements while testifying before a grand jury that was investigating her long-time boyfriend's alleged investment of proceeds from drug trafficking in real estate. The petitioner falsely testified about the source of the tens of thousands of dollars she used to improve her home when, in truth, her long-time boyfriend was involved in financing the purchase of and improvements to her home. Because the grand jury was investigating her boyfriend's real estate investments, the Court found that there was no plausible argument that petitioner's false statements were immaterial. Indeed, materiality is evident from this brief recitation of the facts.

29

The issue of drug quantity, however, can be more difficult to prove than that of materiality.  When considering whether the trial court's error under <u>Apprendi</u> is harmless, this court must ask whether there is any reasonable doubt that the evidence before the jury would have led it to convict Thomas of less than the 100 grams of heroin needed to authorize his sentence. <u>Anderson</u>, 257 F.3d 924, 925 (8th Cir. 2001) (M. Arnold, dissenting).  While there is ample evidence that would allow a jury to conclude that more than 100 grams of heroin was involved in this conspiracy, it is unclear to me that the evidence proves beyond a reasonable doubt that defendant Thomas "knowingly and intentionally" conspired to distribute a quantity of heroin in excess of 100 grams. <u>See</u> 21 U.S.C. § 841(a). The government's evidence against Thomas included testimony offered by several co-defendants, most of whom could not cite a first-hand observation of Thomas's direct involvement with drug manufacture or trade.  The government also produced recordings of wiretapped telephone drug orders to the North Grand location and ledger sheets recording drug distribution; however, from the record, it seems these drug transactions occurred at about the same time or after Thomas moved out of the North Grand location.  Although the jury concluded that Thomas was involved in the conspiracy, the evidence regarding the conspiracy does not patently prove beyond a reasonable doubt that Thomas knowingly and intentionally conspired to distribute a particular amount of heroin.

Next, I do not believe that it is consistent with the Sixth Amendment for our court to sustain Thomas's sentence merely because we have decided that no jury that convicted Thomas of conspiring to distribute heroin could have found him responsible for less than the 100 grams needed to authorize his sentence.  Even though our court applied this analysis in <u>Anderson</u>, I believe the correct question should be whether the evidence proved beyond a reasonable doubt that Thomas conspired with others to distribute more than 100 grams of heroin.  The majority's conclusion, that no jury that found Thomas guilty of the conspiracy could also find less than 100 grams of heroin, requires the reviewing court to look into the thought

process of the jury rather than conclude that the evidence, on its face, proves that the conspiracy involved a certain drug quantity beyond a reasonable doubt. In <u>Johnson</u>, the Supreme Court had overwhelming evidence of materiality – it did not have to look to the jury's other findings to determine whether materiality had been proven. That is not the case here, and I think it is dangerous precedent for a court of appeals to extrapolate from a jury's verdict other facts that, in error, the jury was not instructed to decide.

I believe that the failure of the trial court to submit to the jury each factor that could subject Thomas to punishment beyond the maximum sentence authorized by 21 U.S.C. § 841(b)(1)(C) seriously affects the "fairness, integrity, [and] public reputation of the proceeding." <u>Johnson</u>, 520 U.S. at 469. Nonetheless, until such time as <u>United States v. Anderson</u> is overturned by an en banc panel of this court, I am bound by this circuit's analysis that <u>Johnson</u>'s harmless error analysis applies to <u>Apprendi</u> errors such as Thomas's, and that our court may infer from a jury's verdict that a particular jury would not have found less than the amount of drugs needed to authorize the sentence. I reluctantly concur.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

31